United States District Court
Southern District of Texas
**ENTERED**
November 23, 2018
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

Kelvin E. Dunham,       §
      Plaintiff,       §
      §
v.       §    Civil Action No. H-17-2641
      §
Nancy A. Berryhill       §
      Defendant.       §

## MEMORANDUM AND RECOMMENDATION

In this Social Security appeal, Plaintiff Kelvin Dunham appeals the Commissioner's final decision denying his application for social security benefits. (Docket Entry No. 1.) This case was referred to the magistrate judge for findings and recommendation pursuant to 28 U.S.C. § 636(b)(1). (Docket Entry No. 9.) Pending before the court is Plaintiff's Motion for Summary Judgment (Docket Entry No. 11) and Defendant's Cross-Motion for Summary Judgment. (Docket Entry No. 13.) Having carefully considered the motions, filings, and applicable law, the court recommends that the final decision of the Commissioner be AFFIRMED.

### 1. Procedural Posture

Dunham applied for disability insurance benefits on July 23, 2014 (Tr. 335–36), claiming physical and mental limitations. (Tr. 378, 381, 383–84.) In his application materials, Dunham stated that he was born in 1964 and worked as a day

laborer and carpenter until March 1, 2014, when he allegedly became completely disabled. (Tr. 338, 386.) The Social Security Administration denied Dunham's application on November 10, 2014, and Dunham appealed. (Tr. 238, 396–400.) Upon reconsideration, his application was denied again on January 12, 2015. (Tr. 259.)

Dunham filed a written request for hearing on January 23, 2015 (Tr. 403–07), and the Administrative Law Judge (ALJ) D'Lisa Simmons held a hearing on May 23, 2016. (Tr. 209.) On June 27, 2016, the ALJ issued an unfavorable decision finding Dunham not disabled. (Tr. 142.) Dunham filed the present complaint in federal court to appeal the ALJ's decision. (Docket Entry No. 1.)

## 2. Legal Standards

### A. Five-Step Process

The Social Security Act provides disability insurance benefits to people who have contributed to the program and have a physical or mental disability. *See* 42 U.S.C. § 423. It defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. The claimant bears the burden of proof on the

2

first four steps, but the Commissioner bears the burden on the fifth step. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b) (2016). A person who is working and engaging in substantial gainful activity is not disabled, regardless of the medical findings. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

At step two, the ALJ must decide whether the claimant's impairment is severe, irrespective of age, education, or work experience. 20 C.F.R. § 404.1520(c) (2016). A person who does not have a "severe impairment" is not disabled. *Wren*, 925 F.2d at 125. An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

When a person claims to be disabled due to mental impairments, the ALJ must, at step two, follow a special review technique to assess severity by (1) determining whether the alleged mental impairments are medically determinable and (2) rating the degree of functional limitation resulting from the alleged mental impairments. 20 C.F.R. § 404.1520a(b) (2016). To rate the degree

3

of functional limitations resulting from mental impairments, for the purposes of the step-two severity determination, the ALJ is required to look at four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3) (2016). These four areas are commonly referred to as the "paragraph B" criteria.

Once the ALJ finds that the claimant has any severe impairment, the ALJ must determine, at step three, if the impairments "meet[] or equal[] a listed impairment in appendix 1." 20 C.F.R. § 404.1520(d) (2012). If the requirements of a listing are met, the individual will be considered disabled. *Id.*

For the impairments that do not meet or equal a listed impairment, the ALJ must proceed to assess the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e) (2012). An RFC assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record. 20 C.F.R. § 404.1545(a)(1)." *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005).

To assess the RFC, the ALJ must consider all medically determinable impairments, including those not labeled severe at step two. 20 C.F.R. § 416.945(a)(2); Soc. Sec. Rul. 96–8P, 1996 WL 374184, at *5. "The RFC

4

assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *7 (July 2, 1996).

The RFC is then used to determine whether the claimant can perform past relevant work at step four. *Id.* If the claimant is capable of performing the work the claimant has done in the past, the claimant is not disabled. 20 C.F.R. § 404.1520(f) (2012).

If the ALJ finds that the claimant's RFC precludes the claimant from performing past relevant work, the ALJ must proceed to step five. 20 C.F.R. § 404.1520(g)(1) (2012). At this step, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Id.*

### B. Substantial Evidence Standard of Review

This court's "review of the ALJ's disability determination is 'highly deferential': [it] ask[s] only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). The court "does not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209

F.3d 448, 452 (5th Cir. 2000). "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* The reviewing court is required to examine the record as whole to determine whether substantial evidence supported the ALJ's decision. *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

### 3. ALJ's Decision and Administrative Records

#### A. Hearing

At Dunham's hearing on May 23, 2016, the ALJ heard testimony from Dunham and a vocational expert (VE). At the hearing, Dunham testified about his physical impairments. (Tr. 215–19.) Dunham also testified about his mental impairments, including anxiety, depression, and feeling worthless. (Tr. 220.)

The VE testified about how Dunham's previous occupations are classified under the Dictionary of Occupational Titles ("DOT"). The VE classified construction worker as very heavy, unskilled; a carpenter as very heavy, medium skilled; a stucco and drywall worker as very heavy, skilled. (Tr. 224–25.) The ALJ asked the VE a series of hypothetical questions about the kinds of work a person with certain assumed impairments would be able to perform. The assumed

impairments in the hypothetical were limited to light work: (a) with the capacity to lift, carry, push and pull no more than 20 pounds occasionally, 10 pounds frequently; (b) sit, stand, or walk for a total of six hours a day each throughout the eight-hour workday; (c) no overhead reaching bilaterally and frequent handling with the right upper extremity; and (d) occasional crawling and no use of scaffolding, ropes, or ladders. The VE testified that although the hypothetical person could not perform Dunham's past work, he would be able to work as a ticket seller, office cleaner, or a retail marker. (Tr. 225–26.)

Dunham's attorney examined the VE and asked her a modified question, adding the limitation that the hypothetical worker would "not have to be required to interact with the public and [be required to have] only occasional interaction with supervisors and coworkers." (Tr. 227.) The VE answered that even under the modified RFC, the hypothetical worker could still work as an office cleaner and retail marker. (Tr. 227.) The attorney also asked whether the hypothetical worker could maintain competitive employment if the worker had to miss work one day a week or four days per month, and the VE testified that there would be no job that the worker with this additional disability could perform. (Tr. 227.)

At the end of the hearing, the ALJ asked if the VE's testimony at the hearing was consistent with the Dictionary of Occupational Titles ("DOT"), and the VE answered that it was. (Tr. 228.)

**B. ALJ's Decision**

At step one, the ALJ found that Dunham had not engaged in substantial gainful activity since the alleged disability onset date. (Tr. 130.) Although Dunham had some income in 2014, the ALJ found that the amount of income did not exceed the threshold amount that constitutes substantial gainful activity. *Id.*

The ALJ next made a severity determination for Dunham's mental and physical impairments. As to the mental impairments, the ALJ found that Dunham had seven medically determinable impairments (panic disorder, schizotypal disorder, non-specified psychosis, antisocial personality disorder, alcohol abuse, cocaine abuse in purported sustained remission since 2009, and tobacco abuse) but found none of the mental impairments to be severe. (Tr. 131.) The ALJ conducted the special technique ("paragraph B") analysis and found that Dunham had no limitation in activities of daily living, mild limitation in social functioning, mild limitation in concentration, persistence, or pace, and no episodes of decompensation. (Tr. 130–31.) For all of the four areas, the ALJ exclusively relied on Dunham's own statements in the function report, dated August 29, 2014, and the Agency consultant's consultative examiner's report (CER), dated October 13, 2014. *Id.*

As to the physical impairments, the ALJ found the following impairments to be severe: degenerative disc disease, shoulder tear and tendonitis, right carpal

tunnel syndrome, and arthritis in the right hand. The ALJ found other physical limitations, arthritis in the shoulders and in the left hand, to be non-severe because these impairments had not met the twelve-month durational requirement. (Tr. 130–31.)

At step three, the ALJ did not find that any of Dunham's impairments was medically equivalent to a listed impairment in 20 C.F.R. § Pt. 404, Subpt. P, App. 1. (Tr. 133, 135.)

Before reaching steps four and five, The ALJ determined that Dunham has the RFC to (a) lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently; (b) sit, stand, and walk for six hours per each activity throughout an eight-hour workday; (c) never reach overhead with the bilateral upper extremities; (d) frequently handle with the right upper extremity; (e) occasionally crawl; and (f) never climb ladders, ropes, or scaffolds. (Tr. 135–36.) The ALJ's RFC assessment was limited to Dunham's physical capacity to work; the ALJ did not find that Dunham's mental impairments had an effect on his RFC. (Tr. 135.) In reaching this conclusion, the ALJ first stated that she was required to consider the mental impairments in assessing the RFC:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment, but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the

> broad categories found in paragraph B of the adult mental disorders
> listings in 12.00 of the Listings of Impairments. (SSR 96-8p).
> Therefore, the following residual functional capacity assessment
> reflected the degree of limitation found in the "paragraph B" mental
> function analysis.

(Tr. 133.) Thus the ALJ understood that even if Dunham's mental impairments were not severe, she was still required to make a function-by-function assessment of the mental impairments as stated in Soc. Sec. Rul. 96–8P, 1996 WL 374184, at *3–4. The ALJ then summarized Dunham's medical treatment records for his mental impairments from August 2014 to May 2016. (Tr. 133–35.) The ALJ's analysis of those records is discussed below.

The ALJ started her RFC analysis by discussing the weight she assigned to medical opinion evidence, noting that the Agency received a significant volume of the physical and mental medical exhibits after the Agency made the prior determinations. (Tr. 140.) Based on the ALJ's own review of the medical exhibits, the ALJ assigned "little weight" to the physical consultative examiner's report (CER) but "significant weight" to the mental CER:

> I gave little weight to the assessments of the State agency's physical
> consultants at the initial and reconsideration levels of determination
> (Exs. 4A and 8A). At both prior determinations, the physical
> consultants found there were no severe physical impairments;
> however, the bulk of the medical exhibits were only received in the
> file after the prior determinations (Ex. 9F-21F). These records
> contained further evidence substantiating the existence of the severe
> physical impairments stated at finding #2 of this decision. These
> exhibits would have likely been material to the State agency's

10

physical consultants [sic] assessment as to the existence of severe physical impairments in this case.

I gave significant weight to the assessments of the State agency's mental consultants at the prior determinations (Exs. 4A and 8A). These reviewers [sic] the claimant's mental impairment was not severe. While medical exhibits submitted only after the prior determinations indicated further medically acceptable diagnoses of mental impairments - findings on mental status examinations, indications the claimant was not medicated at times of symptom exacerbation, and his reported activities of daily living in his function report indicated that even subsequent to the prior levels of determination his mental impairments remained non-severe. Moreover, the mental consultants did have access to the report of the psychological consultative examiner, which documented the claimant's paranoid delusions (Ex. 4F). This paranoia was the [sic] generally the only pertinent positive finding in practically every subsequent mental health treatment note; therefore, I found the subsequently submitted mental health treatment notes would not have been material to the State agency's mental consultants had they had the opportunity to review them. As such, I gave great weight to these assessments even as they apply to the claimant's current mental condition.

(Tr. 140.)

Based on these RFC findings, Dunham's work history, and the VE's testimony at the hearing, the ALJ determined at step four that Dunham is not able to perform any of his past relevant work. (Tr. 140–41.) At step five, the ALJ found that Dunham could perform other work in the national economy as a ticket seller, office cleaner, or retail marker. (Tr. 141–42.) Accordingly, the ALJ concluded that Dunham has not been under a disability from March 1, 2014, through the date of the decision, June 30, 2016. (Tr. 142.)

### 4. Analysis

Dunham raises four issues in his motion for summary judgment: whether (1) the ALJ should have found Dunham's mental impairments to be severe; (2) the ALJ should have had a qualified psychologist or psychiatrist review the record and opine on Dunham's RFC; (3) the ALJ erred by not considering the medically determinable mental impairments when she assessed Dunham's RFC; and (4) the VE's testimony was inconsistent with the DOT, and the ALJ was required by law to resolve the inconsistency before denying benefits. For the following reasons, the court finds no reversible error.

### A. Whether the ALJ made reversible error in her step-two severity determination

Dunham argues that the threshold requirement for finding an impairment to be severe is de minimis, requiring only that the impairment has a "minimal effect" on a person, as defined under *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Dunham also argues that error at step two is not harmless if the step-two error leads to an erroneous RFC finding.

Under the sequential analysis framework, error at step two rarely constitutes reversible error, where, as here, the ALJ conducts the remaining steps of the five-step sequential analysis. *Groberg v. Astrue*, 415 F. App'x 65, 67 (10th Cir. 2011). "The real problem occurs later in the analysis, where the ALJ is required to

consider the effect of all medically determinable impairments, severe or not, in calculating the claimant's RFC." *Id.*

Here, the ALJ completed the full five steps of the disability determination. As will be discussed in detail below, the ALJ considered all of Dunham's impairments, both mental and physical, to make an RFC assessment. Had the ALJ found Dunham's mental impairments to be severe, she would still have proceeded to the RFC analysis and reached the same conclusion. Therefore, to the extent that the ALJ made any error at step two, the error is harmless and does not justify a remand. *See Grosberg*, 415 F. App'x at 67.

## B. The ALJ's RFC assessment is not contrary to the law and is supported by substantial evidence

Dunham argues that the ALJ made a reversible error at the RFC assessment stage by failing to consider, or give adequate weight to, medical evidence from 2015–16 that documented the treatment of Dunham's mental impairments. Dunham claims that (1) the ALJ did not include any limitations related to his mental impairments in the RFC; (2) the ALJ "played doctor" by relying on her lay interpretation of the medical records that became available after the Agency examiner opined on his disability; and (3) the ALJ inappropriately assigned significant weight to the Agency's psychological consultative examiner's report.

### i.     The ALJ considered mental impairments in assessing Dunham's RFC.

Contrary to Dunham's contention, the ALJ did consider Dunham's mental impairments in assessing his RFC. The ALJ's RFC assessment did not mention mental limitations because she found that the mental impairments had no bearing on Dunham's RFC—the ALJ explicitly stated that Dunham's "functional limitations were due instead to his physical limitations." (Tr. 135.)

In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments of which the ALJ is aware, including those not labeled severe at step two. 20 C.F.R. §§ 416.945(a)(2), 416.920(e) (2016); Soc. Sec. Rul. 96–8P, 1996 WL 374184, at *5. Where the claimant suffers from mental impairments, the ALJ's RFC analysis must consider the ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, co-workers, and work pressures in a work setting. Soc. Sec. Rul. 96–8P, 1996 WL 374184, at *3–4 (RFC must incorporate factors listed in 20 C.F.R. §§ 404.1545(c), 416.945(c)) (2016); *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (holding that Soc. Sec. Rul. 96–8p provides guidance to the district courts).

While it is preferable that an ALJ's decision clearly state each standard and the supporting facts, a "failure to expressly list or refer to each issue does not mean that the judge did not consider them." *Lewis v. Barnhart*, 431 F. Supp. 2d 657, 664

(E.D. Tex. 2006). Similarly, "[t]he fact that the ALJ cited certain evidence that he felt supported his decision does not mean that he failed to consider all of the other evidence in the record." *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010). Thus, even where the clarity of an ALJ's written decision may be lacking, the analysis must focus on "whether [the decision] clearly reflects that it was made without regard to applicable law." *Lewis*, 431 F. Supp. 2d at 664.

Here, the record shows that the ALJ did consider Dunham's mental impairments to assess his RFC, and the ALJ's RFC assessment was supported by substantial evidence. The ALJ considered Dr. Rosin's mental status examination from October 2014, which reflects Dunham's ability to understand, carry out, and remember instructions: Dr. Rosin indicated that Dunham had normal concentration, could count backward from 20, could spell a five-letter word in reverse, and was alert and oriented to person, place, and time. (Tr. 450.) As the ALJ noted, both mental healthcare providers who treated Dunham from 2015–16, Dr. Irina Digilova and Licensed Clinical Social Worker (LCSW) Jennifer Franco, noted that Dunham had sound judgment: Dr. Digilova noted on May 21, 2015, and again on February 18, 2016, that Dunham's memory and attention were grossly intact (Tr. 693, 918); Dr. Digilova also reported that Dunham's thought processing was "linear and goal directed without looseness of associations." (Tr. 918.)

The ALJ also reviewed evidence showing Dunham's ability to respond appropriately to supervision, co-workers, and work situations: Dr. Digilova noted on May 21, 2015, that Dunham had fair insight and judgment. (Tr. 693.) Mental status examination results indicated he was cooperative, forthcoming, and exhibited good eye contact on February 18, 2016 (Tr. 851), March 22, 2016 (Tr. 881), April 5, 2016 (Tr. 878), April 14, 2016 (Tr. 870), April 19, 2016 (Tr. 915), and May 11, 2016 (Tr. 904.)

These records demonstrate that the ALJ complied with the requirement that she consider all relevant medical impairments, severe and non-severe, to assess Dunham's RFC, pursuant to 20 C.F.R. §§ 416.945(a)(2), 416.920(e) (2016), and Soc. Sec. Rul. 96–8P, 1996 WL 374184, at *5. The decision reflects that the ALJ followed the law. She made a function-by-function assessment of how Dunham's mental impairments impacted his RFC, as required under Social Security Ruling 96–8P, 1996 WL 374184, at *3–4. *See Lewis*, 431 F. Supp. 2d at 664. The record reflects that substantial evidence supported the ALJ's conclusion that Dunham's ability to work was not limited by his mental limitations.

### ii. The ALJ properly interpreted the medical records.

Second, contrary to Dunham's claim, the ALJ was not required to obtain an expert review of Dunham's medical records from 2015–16. Although the Commissioner has the duty to develop the facts relative to a claim for disability

16

benefits, *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000), "the determination of residual functional capacity is the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012). Consequently, the ALJ has the authority to interpret the medical evidence. *Id.*

Here, the medical exhibits consisted of treatment notes of Dr. Digilova and LCSW Franco, documenting their sessions with Dunham, results from his mental status examinations, and his Global Assessment Functioning (GAF) score.[1] (Tr. 691–935.) Dr. Digilova noted that Dunham reported his willingness to start medications, yet he also reported frequently missing medications. (Tr. 134.) LCSW Franco also recorded on April 19, 2016, that a psychoeducation session on pharmacology prompted Dunham to take his prescribed medicine on a daily basis that led to a "significant improvement in symptoms," including a halt to his panic attacks. (Tr. 915.) The ALJ interpreted these medical records and determined that Dunham's mental impairments had no effect on his capacity to work because Dunham was not medicated when he exhibited negative symptoms. (Tr. 140.)

While different interpretations of the medical exhibits may have been possible, the substantial evidence standard of review does not allow the court to reverse the ALJ's decision for that reason. The court cannot reweigh the evidence

---

[1] "GAF is a standard measurement of an individual's overall functioning level with respect only to psychological, social, and occupational functioning." *Boyd v. Apfel*, 239 F.3d 698, 701 n.2 (5th Cir. 2001).

or attempt to resolve the different interpretations of the record—a task solely reserved to the administrative body. *Newton*, 209 F.3d at 452; *see also Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) ("The Commissioner, rather than the courts, must resolve conflicts in the evidence."). Thus, a remand for additional review of the records by a medical expert is not appropriate.

### iii.     The ALJ properly assigned weight to the Agency consultative examiner's report.

Finally, the ALJ did not err in assigning significant weight to the 2014 opinion of the Agency examiner who did not have the medical records from 2015–16 available for her review. Where a claimant challenges the weight assigned by the ALJ, the court's role is limited to ensuring that the ALJ's decision is supported by substantial evidence. *Heck v. Colvin*, 674 Fed. App'x. 411, 415 (5th Cir. 2017).

Here, the ALJ determined that Dunham's mental impairments had no effect on his RFC, based on her interpretations of the medical records from 2015–16. As discussed above, substantial evidence supported the ALJ's determination. Dunham's case is not one where an ALJ "improperly rejected the opinions of [an applicant's] treating physician," *see Newton*, 209 F.3d at 460, or one where an ALJ ignored new evidence. *See Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Accordingly, the ALJ did not err in assigning significant weight to Dr. Rosin's CER, and the ALJ made no reversible error at the RFC assessment stage.

### C. Whether the VE's testimony was inconsistent with the DOT

Dunham claims that the testimony by the vocational expert (VE) was inconsistent with the DOT. According to Dunham, the three jobs that the VE identified (ticket seller, office cleaner, and retail marker) all required constant and frequent reaching, although the ALJ's hypothetical stated that "there should be no overhead reaching bilaterally and frequent handling with the right upper extremity." (Tr. 225.) Dunham concedes that the DOT does not distinguish between overhead reaching and other types of reaching but, regardless, argues that the ALJ should have obtained a reasonable explanation for the conflict between the DOT and the VE testimony pursuant to the Social Security Ruling 00–4P. That ruling states that an ALJ has a duty to ask whether there is any conflict between the VE testimony and the DOT and, if there is a conflict, to resolve the conflict before relying on the VE evidence to support a determination that the claimant is not disabled. Soc. Sec. Rul. 00–4P, 2000 WL 1898704, at *4 (S.S.A. 2000).

Here, there was no conflict between the VE testimony and the DOT to begin with. In a case involving similar facts, the Fifth Circuit held that there was no conflict between the DOT and the VE testimony. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). The applicant, Carey, had one arm amputated, and the VE testified that the applicant could work as a cashier or a ticket seller. *Id.* at 140. The claimant argued that the VE testimony conflicted with the DOT because the DOT

descriptions for both jobs required some ability to finger and handle things. *Id.* at 145. The Fifth Circuit rejected this argument, finding that the DOT did not specifically require the use of both hands, and Carey's healthy arm allowed him to finger or handle things. *Id.* at 146.

The ALJ's hypothetical assumed that Dunham was limited only in overhead reaching capacity. The DOT descriptions about ticket seller (1991 WL 671853), office cleaner (1991 WL 672783), and retail marker (1991 WL 671802) do not require overhead reaching. The DOT specifically articulates when overhead reaching is required. *See, e.g.,* airplane-flight attendant, DOT # 352-367-010 (available at 1991 WL 672909) (noting in part "assists passengers to store carry-on luggage in overhead, garment, or under seat storage"). There is no conflict between the VE's testimony and the DOT. The ALJ did not make a reversible error at step five.

### 5. Conclusion

The record reflects that the ALJ's decision denying Social Security benefits is supported by substantial evidence and is consistent with the law. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the Court recommends that Defendant's cross-motion for summary judgment be GRANTED, and Plaintiff's motion for summary judgment be DENIED.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See* 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72.

Signed at Houston, Texas on *Nov. 21*, 2018.

Peter Bray
United States Magistrate Judge